(February 17, 1909.)

WILLIAM SCHMELZEL and W. G. GALLAP, Copartners Doing Business Under the Firm Name of SCHMELZEL & GALLAP, Respondents, v. THE BOARD OF COUNTY COMMISSIONERS OF ADA COUNTY, Appellant.

[100 Pac. 106.]

COSTS OF JURORS—NECESSARY EXPENSES INCURRED WHILE KEEPING JURY TOGETHER—INHERENT POWER OF COURT TO PROVIDE FOR AND ORDER PAID NECESSARY EXPENSES IN HOLDING COURT—EXPENSES FOR SHAVING JURORS WHILE KEPT TOGETHER ON JURY.

1. The allowance of costs is a matter dependent wholly on the statute, and where there is no statute authorizing it no costs can be allowed.

2. Under secs. 7900 and 7901, Rev. Codes, it is provided that the county commissioners shall provide a room with suitable furniture, fuel, lights and stationery for the use of the jury upon their retirement for deliberation, and that when the jury are kept together they must also be provided, at the county's expense, with suitable and sufficient food and lodging.

3. Secs. 7900 and 7901 are not sufficiently broad and comprehensive to include or authorize the payment by the county of a bill for shaving and hair-cutting for jurors while kept together, either in the progress of the trial or during their retirement for deliberation.

4. Courts of justice have the inherent power and authority to incur and order paid all such expenses as are necessary for the holding of court and the discharge of the duties thereof in the administration of justice.

5. An expense incurred by order of the court for shaving jurors and hair-cutting while the jury was kept together in the progress of the trial is not such a necessary expense incident to and necessary in the administration of justice as to become a county charge. The necessity for a juror shaving and having his hair cut does not arise out of or depend upon his services on a jury, and is no more necessary while serving on a jury than at any other time.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for the County of Ada. Hon. Fremont Wood, Judge.

Appeal from a judgment and order of the district court reversing an order of the board of commissioners of Ada county, refusing the payment of a bill for services rendered jurors. *Reversed.*

Chas. F. Koelsch, Prosecuting Attorney Ada County, and O. M. Van Duyn, for Appellant.

The compensation of jurors is purely statutory. (*Birch v. Phelan,* 127 Cal. 49, 59 Pac. 209; *Hilton v. Curry,* 124 Cal. 84, 56 Pac. 784; *Powell v. Phelan,* 138 Cal. 271, 71 Pac. 335.)

One demanding payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which is authorized by law. (*Irwin v. Yuba Co.,* 119 Cal. 686, 52 Pac. 35; *Shepherd v. Keagle* (Cal.), 53 Pac. 702; *Santa Cruz Co. v. Barnes,* 9 Ariz. 42, 76 Pac. 621; *People v. Supervisors of Albany Co.,* 28 How. Pr. 22.)

The fees and expenses of jurors are to be paid in the manner fixed by law, and are not a charge against the county unless by virtue of some statute making them so. (11 Cyc. 493; 7 Ency. of Law, 2d ed., 955; *Van Eppes v. Mobile Commrs. Court,* 25 Ala. 460.) We concede that a court has the inherent power to incur expenses necessary for the conducting of its business and the exercise of its functions, such as providing furniture, heat, light, etc. This power rests upon necessity but extends only to those matters necessary to the exercise of the court's constitutional powers. (*State ex rel. Kitzmeyer v. Davis,* 26 Nev. 373, 68 Pac. 689.)

Cavanah & Blake, for Respondents.

We have been unable to find that the question as to whether an expense of this character is a legal charge against the county has ever been before the courts for adjudication, but the following cases sufficiently illustrate the principle for which we contend, that the court in its discretion believed the expense was necessary to the proper administration of justice, and by virtue of its inherent power ordered that it be incurred: *Stowell v. Jackson Co. Suprs.,* 57 Mich. 31, 23

N. W. 557; *Bates v. Independence Co.*, 23 Ark. 722; *Fernekes v. Milwaukee Co. Suprs.*, 43 Wis. 303; *State v. Armstrong*, 19 Ohio, 116; *White v. Polk Co.*, 17 Iowa, 413.

AILSHIE, J.—This is an appeal from a judgment of the district court reversing an order of the board of county commissioners of Ada county. The respondents, a firm of barbers, doing business in Boise City, presented to the board of commissioners of Ada county a bill for the sum of $81.65, charged by them for services in shaving jurors and cutting their hair while serving as jurors in the cases of *State v. Haywood* and *State v. Pettibone*, theretofore tried in the district court in and for Ada county. The board of commissioners rejected the bill and refused to allow the same on the ground that the charge is not authorized by law. The claimants appealed to the district court and the order of the board of commissioners was reversed and they were directed to audit and allow the bill. The board of commissioners have appealed from the judgment.

The only provisions to be found in the statutes of this state relative to compensation of jurors and their care are to be found in the following sections: Sections 6136 and 6137 of the Revised Codes provide for *per diem* compensation of jurors and the mileage to be paid them. Sections 7900 and 7901, Revised Codes, are as follows:

"Sec. 7900. A room must be provided by the commissioners of each county for the use of the jury upon their retirement for deliberation, with suitable furniture, fuel, lights and stationery. If the commissioners neglect, the court may order the sheriff to do so, and the expenses incurred by him in carrying the order into effect, when certified by the court, are a county charge."

"Sec. 7901. While the jury are kept together, either during the progress of the trial or after their retirement for deliberation, they must be provided by the sheriff, at the expense of the county, with suitable and sufficient food and lodging."

It will be seen at once that none of the provisions of the foregoing sections apply to the particular charge involved

in this action. It must also be conceded that the allowance of costs is a matter dependent wholly upon the statute, and where there is no statute authorizing it, no costs can be allowed. (11 Cyc. 24, 493, and cases cited.) It seems to be admitted by respondents in this case that the bill ordered paid cannot be sustained or justified as items of costs, but that if sustained it will, at most, rest upon the "inherent power of the court to authorize the performance of the services which were performed by respondents," so as to thereby become a legal charge against the county. It is contended that under the provisions of section 13, article 5 of the constitution, providing that "The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a co-ordinate department of the government," etc., it would be an interference with the inherent power of the courts, as the constituted tribunals for the administration of justice, if the legislature could, by a failure to enact a statute, cut off the necessary and incidental expenses that must inevitably attend the administration of the judicial functions of the court. We think, upon the outset, that, without discussion or controversy, it must be admitted that the courts have the inherent power and authority to incur and order paid all such expenses as are necessary for the holding of court and the administration of the duties of courts of justice. (*State v. Davis,* 26 Nev. 373, 68 Pac. 689; *Board of Commrs. v. Stout,* 136 Ind. 53, 36 N. E. 237, 22 L. R. A. 398; *In re Janitor of Supreme Court,* 35 Wis. 410; *Stowell v. Jackson Co. Supervisors,* 57 Mich. 31, 23 N. W. 557; *Bates v. Independence Co.,* 23 Ark. 722; *Fernekes v. Milwaukee Co. Supervisors,* 43 Wis. 303; *State v. Armstrong,* 19 Ohio, 116; *White v. Polk Co.,* 17 Iowa, 413.)

We conclude, without further discussion or citation of authorities, that if the expense incurred for which this claim was presented was a necessary incident in the administration of justice, then it should have been allowed and the judgment of the trial court is correct. But if, on the other hand, it was not a necessary expense in order to administer justice in the court in which it was incurred, then it is unauthorized,

and cannot be recovered against the county. It is claimed that this was an extraordinary case, and that in one of the state cases in which the jurors were shaved by respondents, the jurors were kept together continuously for about two months, and in the other case they were kept together continuously for about one month. It is insisted by respondents that it was necessary from a sanitary point of view, as well as for the comfort of the jurors, that they should be shaved and have their hair cut. It is also argued that they could not go to the barber-shop themselves and secure this service, for the reason that they were kept together and under the guard of court bailiffs, and that it was therefore necessary to have the barbers go to the jury-room and there perform this service. Conceding these things as true, the barber could have as easily gone to the jury-room and shaved the jurors and cut their hair at the expense of the individual jurors as he could at the expense of the county. The dangers of their being tampered with or subjected to undue influence by the process would have been no greater if the individual jurors were paying the bill than if the county were becoming liable for it. The necessity for this was not entailed or brought about by reason of the men serving on the jury. Their whiskers and hair would grow just the same at home or at their offices or places of business as they would while serving on the jury. There is nothing peculiar or special about jury service that will cause whiskers and hair to grow. If the jurors had been at home or elsewhere about their business in their usual avocations, it would have been just as necessary for them to have shaved themselves or have gone to a barber for this service as it was for them to have the service while serving on these juries. The demands and necessities for this service would be no greater than the necessity might be under some circumstances for having a juryman's laundering done by the county while he is serving on the jury. We apprehend that no one would seriously contend that the county can be held liable for clothing and laundering for jurors while kept together, and still the same reasons may be urged with equal force in support of such a charge

as for the charge claimed in this case. Sanitary and humanitarian considerations, as well as the comfort and convenience of jurors, might as urgently demand these comforts as they would demand a hair-cut and a shave. The answer is that such requirements are not the result of jury service and are not covered or contemplated by statute. The statute directs that jurors shall be paid certain *per diem* compensation and mileage, and that in addition thereto, when kept together, either during the progress of the trial or after their retirement for deliberation, the county shall furnish them with suitable room, furniture, fuel, lights and stationery, and sufficient food and lodging. These things are furnished the jurors in addition to their mileage and *per diem* compensation. If the legislature had intended that the county should furnish anything else, .they would have included it in the statute. The legislature has a right to fix the compensation, and they could have added a charge of the character involved in this action if they had seen fit to do so. Until it is so provided by statute it is clearly unauthorized. If the courts go beyond the statute for one thing that is not inherently necessary for the administration of justice, they may do so for another item, and there will be no limit to such expenses. There is no merit in the argument that the jurors deserved to have this paid by the county. Everyone may admit that. The compensation they receive for such services is very meager, and but few would be willing to discharge the duties in consideration alone of the compensation allowed. It is, however, the duty of every good citizen to serve his state as a juror when called upon. That is a part of his duties as a citizen, and in the absence of a statute authorizing compensation, he would be obliged to do so without compensation. It has been so held in many states. (*Justices v. State*, 24 Ga. 82; *White v. Panola Co.*, 12 Tex. 173; *Person v. Ozark Co.*, 82 Mo. 491; *Bright v. Pike Co.*, 69 Mo. 519; *Van Epps v. Mobile Commrs. Court*, 25 Ala. 460.) In the absence of a statute authorizing the county to pay the bill, it has been held that the juror would have to pay for his food, as such an item is not required and made necessary

simply by reason of his service on the jury. (See cases above cited.)

We conclude that the order of the board of commissioners in disallowing this claim was correct, and that the district court erred in reversing that order and directing the payment of the same. The judgment is reversed and the cause is remanded, with directions to take such further action as may be necessary in harmony with the views herein expressed. Costs awarded in favor of appellant.

Sullivan, C. J., concurs.

STEWART, J., Dissenting.—It is stipulated and agreed by the respective parties to this case, first, that the bill for which this action is brought was for services rendered by the respondents upon the order of the district judge in serving jurors while confined under an order of the district judge in the trial of criminal cases.

The only question then is, is the claim a county charge?

It is conceded by both parties to this controversy that the statute does not authorize the incurring of such an indebtedness and makes no provision for the same becoming a county charge; so this phase of the controversy may be dismissed without discussion.

The respondents contend that the district court had the inherent power to incur the indebtedness for which respondents' claim is made, and to make the same a county charge. It will be seen from the stipulated facts that the respondents rendered the services upon the order of the district court; that the services were rendered to a jury confined upon the order of the district court. From this it is argued that the legislature has provided only for the payment of board and lodging, where a jury is confined, and that the county is not liable for any other charge.

I think it may be conceded that the claim made in this case is not for compensation to the jury. The jurors are making no claim for any compensation whatever, and the claim made by respondents is not made as a compensation given or rendered to the jury. The respondents make the

claim for services rendered upon order of the trial judge for a necessity, which he deemed proper in the administration of justice in that court.

It was contended by appellant upon the argument that in the absence of a statutory provision authorizing the same, the trial judge would have no authority to provide board and lodging for jurors while confined, and, as I understand it, the majority opinion upholds this contention; and in line with that contention holds that because the statute does not authorize the incurring of the expense as a county charge, for the services involved in this case, the same could not be made a county charge upon the order of the trial judge. If, however, the trial court has the inherent power to incur as a county charge the expense for boarding and lodging a jury, then the provision of the statute authorizing such charge adds nothing to the liability of the county therefor, or the right of a claimant to recover for the same. If the power to incur this expense is inherent in the court, in the administration of the law, then the legislature cannot deprive the court of such power by the failure to authorize the same by legislation. Neither would the fact, that the same is authorized by legislation, increase the power of the court. So in the case at bar, if the trial court has the inherent power to authorize the indebtedness, for which respondents make claim, then it is of no consequence whether the statute authorizes the same or not. The mere fact that the statute does not authorize the same would not take away the power of the court to incur such indebtedness.

The law is mandatory that in a trial for murder the jury must be kept together in charge of a proper officer. The jury is thus deprived of their freedom and liberty and opportunity of caring for their own personal wants. They are in effect prisoners confined in the custody of the law. They cannot communicate with anyone or receive any communication except upon the order of the court. They could not visit the barber-shop; neither could the barber visit them. The law has control of the jury and it seems to me whatever necessary expense is incurred under the law for the care and cus-

tody of the jury, while confined, may be supplied and must be paid by the county. In my opinion this is an expense incurred in the due administration of justice. It is necessary for all communications with the jury to be controlled by the court; that all persons who visit them or whom they visit must be under the supervision of the trial court; and this necessarily results in the court controlling and directing who may administer to the jury, and deprives them of the right of selection, or freedom of communication, and takes away from the jury any choice in person or method of administering to their wants and deprives them of any right to control such matters, and leaves the same entirely to the law or the representative of the law, the trial judge, under whose order the jury is confined. In such case, there seems no reason why the necessary expense incurred in thus administering the law should not be a public charge. True it is that the whiskers of a man, confined under the law, would not grow any more rapidly than if he were free; yet if free, they could be treated at his will; while confined, they can only be treated as the law permits under the direction of the trial judge. It is apparent in this case that the trial court deemed it necessary for the jurors to have the care and attention given them by the respondents, and it is not controverted by the county or claimed that the necessity for the services did not exist.

The failure to properly care for a jury, and leave their personal appearance without any attention for the period of thirty or more days, might materially affect the due administration of justice. Certainly in this day of progress and intelligence, if the personal appearance of a juror was neglected and uncared for for that period of time, the jurors who were recognized at the opening trial of the case and accepted as jurors might present a very different and contradictory impression at the close of the trial by reason of their confinement. I do not believe that the time has come in this state when we should return to the cruel and barbarous methods adopted under the common law, that the jury should be confined until they have agreed without board, heat or lodging.

Ten years' experience as trial judge in this state has proven to me conclusively that when a jury is treated as human beings and given the care and comfort to which they are entitled, that much better service will be given by them in administering the laws of our state; that they are in better humor, better spirits, give closer attention to the questions in issue, and are more just in their conclusions than if they were closely confined and denied the comforts to which they are entitled, and thereby forced to reach conclusions in order to be released from their confinement and go their way and provide such comforts for themselves. This question is not wholly without authority, and I believe that the weight and better argument is with the contention made by the respondents in this case. One of the earliest cases and the one most cited is *Lycoming County v. Hall*, 7 Watts, 290. In the state of Pennsylvania, at the time this decision was rendered, there was no statute authorizing the payment, as a county charge, of the board and lodging for a jury. The same reasoning applied in that case, therefore, would apply to the case now under consideration. The court held:

"Compelled to live at the discretion of the court, it would be unjust to charge them as the involuntary recipients of what they do not order; nor would they be liable for it, furnished, as it always is, at the special instance and request of the officers of the law."

So in the case at bar the attention given the jurors was not upon their order. It was not rendered by a servant selected by the jury, but was furnished at the special instance and request of the officers of the law. The court in that case, in further commenting upon this question, says:

"A physician would scarce be thought to render, on the credit of the patient, professional services ordered by the court for a juror suddenly ill, when the object is not his private benefit, but to serve the ends of public justice by repairing a disordered part of the judicial machinery."

So in this case, the service rendered by the respondents was not upon the order of the jury, but was rendered to serve the ends of justice in caring for a part of the judicial machinery, used in the administration of the law.

While the statute authorizes the payment of board and lodging for a jury when confined, yet no provision is made for the board and lodging of the bailiff or other officer in charge of such jury; yet this bailiff is required to board at the place selected under the law; he has no choice; he is forced to act under the statute and the direction of the court. Such course is necessary in the due administration of the law; yet if the argument used in the majority opinion is sound, the expense of lodging and boarding the bailiff is not a county charge and must be borne by himself. Thus the compensation fixed for his services in anticipation of his living at home is very materially changed and reduced by reason of his being compelled to live at a place selected by the law; and if the expense incurred by a bailiff, in charge of a jury, when confined under the law, is incident to the administration of the law, then I can see no reason why the expense incurred in caring for a jury while confined under the law is not a necessary expense incident to the administration of the law. This seems to be the position taken by the supreme court of Wisconsin in the case of *Fernekes v. Supervisors of Milwaukee County,* 43 Wis. 303:

"It was the duty of the deputy sheriffs, in obedience to the order of the court, to attend upon and take charge of the juries, from time to time, during the trial, and to keep them together until they had agreed upon their verdict or were otherwise discharged. From the necessity of the case, the deputies had to be in constant attendance upon the juries, and could not properly leave them, and go to their homes for meals and lodging. It appears that the juries were taken to the hotel of the plaintiffs for meals and lodging, and that meals and lodgings were furnished to the deputies while thus in attendance upon them. Under these circumstances, we think the county is liable for the meals and lodging furnished the officers, necessarily in attendance upon the juries."

I desire to quote from this case further upon another phase of the question under consideration, and that is, that as the statute fixes a *per diem* for the jury, if the claim of respondents is allowed, the jurors would be receiving compensation

in addition to that provided by law. In the case above the court says:

"It is true that, at the time of the Spellen trial, deputy sheriffs in Milwaukee county were entitled to a *per diem* fee of four dollars, which, it is said, was a liberal compensation for all services required of them by law. As a general rule, officers take their offices *cum onere,* and must defray their own personal expenses, such as hotel bills, railway fares, etc. But we think the case presented is an exception to that rule."

Quoting also: "The juries likewise received a *per diem,* and yet the county board paid, without dispute, for meals and lodging furnished them. We think the same liability on the part of the county applied to meals and lodging furnished the officers in charge of the juries."

In this case also there was no statute providing either for the county paying for the meals and lodging of the jury or the officer in charge of the jury. In the case of *Watson v. Moniteau Co.,* 53 Mo. 133, the supreme court of Missouri quotes with approval from the case of *Commissioners v. Hall, supra,* and says:

"The court ordered the jury to be kept together during the trial and not allowed to separate, and to be provided with board and lodging. There is, it seems, no express provision in the statute in relation to such an expense, though there is no question of the power of the court to make such an order."

A very intelligent and convincing consideration of this question can be found in the case of *Stowell v. Jackson County Supervisors,* 57 Mich. 31, 23 N. W. 557, in which Justice Campbell, speaking for the court, says:

"The jury is, when sworn, a part of the court itself and cannot be put beyond the supervision of the court and its discretion in determining what safety requires. It is not seriously disputed, and in the face of the settled law it cannot be disputed, that the power of the court extends to both the fact and the place of custody.

"If the court has power to require such action, there must be a liability on the part of the public to pay such expense as it involves. Our constitutional and statutory regulations

are not consistent with the idea that anyone can be compelled to furnish property, or the use of property, without compensation. Whoever has power to incur the obligation must necessarily have power to bind its fulfillment. There are many things which become incidentally necessary in the support and action of courts which are not specifically provided for by law, and which no one is legally bound to furnish. Usually these incidental expenditures are made by the sheriff or clerk, and no one questions their correctness. But the courts cannot be left at the mercy of their officers in such matters. The practice has always been, and it is necessary, for the court itself to require the procurement of such articles and services. There is no reason for distinguishing this case from any other, where in the course of procedure an emergency arises for action which will create expense. It would be barbarous to confine jurors within the precincts of the courthouse, and there is no authority to confine them as prisoners in jail. There must be some power to select a suitable place, and facilities for their comfort; and while, perhaps, the sheriff might be authorized to make this selection with the court's approval, yet the obligation to pay for it would, none the less, come from the fact that the court required it. It is within the legislative power to arrange specifically how all these matters should be disposed of; but as the law now stands, the inherent power and duty of courts to exercise their functions must authorize such action as becomes expedient in the course of judicial business.''

In this case there was no statute authorizing the incurring of the expense of a place for the confinement of the jury. So in the case at bar the mere fact that the legislature has made no provision for the expense in caring for the appearance and comforts of the jury, other than that of board and lodging, does not deprive the court of the inherent power to make such provision as it deems proper and necessary for the care and welfare of a jury while confined in order that justice may be properly administered. The appearance, sanitary condition and health of the jury, while in the custody of the law, are just as much of concern to the state in making proper pro-

vision therefor in order that the jury may perform the duties imposed upon it, as that of furnishing them room and board. It is, to my mind, a fact to which the power of the court extends in administering the laws of the state.

In the case of *Commissioners of Allegany Co. v. Commissioners of Howard Co.*, 57 Md. 393, the court in discussing this question says:

"In ancient times, after a case was submitted to the jury and the bailiff had been sworn, the jury were kept locked in their room, without meat or drink, until they had agreed upon a verdict. But this rigorous rule has been greatly relaxed, if not entirely abandoned, and for many years past it has been the practice of the courts to keep jurors together, especially in capital cases, and to furnish them with their meals at the public expense, even before the case is closed and the bailiff sworn, and in both criminal and civil cases to so furnish them with necessary and reasonable meals after they are locked up in their room to consider of their verdict. After the bailiff has been sworn and the jury have been locked in their room, they are no longer at liberty to order or have their own meals, or to regulate their own movements; but are under the immediate control and charge of the court in these respects, and cannot have anything to eat unless by order of the court, which, in the exercise of a sound discretion, may order necessary and reasonable meals for them as well as for the bailiff who has them in charge, and the county commissioners are bound to pay the costs of the same."

Is it possible in this state, that the demands of the law are so rigid, that the comforts and sanitary care of a jury are of no concern in the due administration of the law? If these matters are incidents in the due administration of the law, then the court has the inherent power to make proper provision therefor, and it matters not whether the legislature has conferred this authority upon the court or not. As said by the supreme court of Arkansas in the case of *Bates v. Independence Co.*, 23 Ark. 722:

"In the trial of felonies, the jury are not permitted to separate, and, in protracted cases, it is frequently necessary

to furnish them with lodging until they make up and render their verdict, or are discharged for want of agreement, or other cause; and here, where the English practice of starving them into an agreement does not prevail, it is customary and proper to furnish them with necessary food, etc. The costs of procuring lodging and food for the jury, in such cases, is part of the expenses of the court, necessarily accruing in the administration of justice, and, we think, payable out of the county treasury, under the sections of the statute above quoted.''

This question was before the supreme court of the state of Ohio in the case of *State ex rel. Cooper v. Armstrong,* 19 Ohio, 116, in which the court held:

''When it becomes necessary for the sheriff to furnish food, etc., to juries impaneled in capital cases, the court will allow the account for such expenditures as a necessary incident to their powers, and will compel the county auditor, by mandamus if necessary, to draw his order upon the treasurer for the amount expended by the sheriff.''

Thus we see under these authorities that the court has the inherent power to incur at the expense of the county the necessary expense in the due administration of justice in caring for a jury. It is no argument against this inherent power to say that while the court has the inherent power to furnish board and lodging, it does not have the inherent power to shave and cut the hair of the jurors, for the reason that the former is necessary, while the latter is not. I apprehend, however, that where a jury is confined for the period of time the juries were in these cases, that the personal attention of the jury and its sanitary wants necessarily become a matter of very great importance. It is not claimed that the jury, at the time the services were rendered, were not in need and did not require such services. That fact is admitted, and it appears was established to the satisfaction of the trial court, and by reason of such necessity he made the order under which the respondents rendered the services.

The majority opinion holds that a juror's whiskers and hair will grow just the same at home and at his place of business as while serving on a jury; and that there is nothing

peculiar or special about jury service which will cause whiskers and hair to grow, and for that reason seems to conclude that it is just as much the duty of a juror to shave and care for himself while on the jury as though he were at home. It occurs to me, however, that the juror is at liberty at home and at his place of business to shave himself, select his own barber, and have his beard and hair clipped at will; and that while it will perhaps grow no faster during confinement than when at liberty, yet his personal liberty to stop the growth is denied while in confinement. The law has taken possession of him, denied his right to stop the growth of his hair and whiskers. The law is responsible for the growth. He has no will with reference to the matter, and, in my opinion, it is the law which should take care of his personal appearance and supply him with care which he is denied by reason of his confinement.

The majority opinion seems to hold that the claim of respondent is parallel to a claim for laundry or clothing furnished a jury; but, to my mind, the cases are not parallel or in any way similar. The juror may send his linen and have it laundered and returned and again use it; so he may order new clothing and use that; but I am not advised of any process by which a juror could send to the barbershop his whiskers or hair and have them properly groomed and returned and placed in position for future use. In one case the article may be severed from the individual and treated separately, while the other requires the presence of the individual as a whole. Neither, in my opinion, is it sufficient to say that the barber may go to the jury-room and perform the services there, for the juror is prohibited from communicating with the barber or receiving him in the jury-room; and the barber is precluded from visiting the jury-room except upon the order of the court. The juror has no right and is prohibited from ordering a barber to attend him and serve him. It is only upon the authority of the law that this service can be rendered and, in my judgment, when the service is rendered and necessary in the due administration of the law, it should become a county charge. So, in whatever way we approach this subject, it is apparent that the juror is denied,

by virtue of the law, the opportunity to exercise his will and give such attention to himself as he deems proper, and must depend wholly upon the law for his care and personal attention. These are matters, in my opinion, which are of a very great concern, and are important facts in the administration of the law.

The same argument made by appellant and approved by the majority opinion says to the jury: "You have to live and lodge at home; therefore, you should pay for your board and lodging while on the jury. You have to eat, whether confined or at liberty; your appetite will go on just the same whether at liberty or confined; therefore, the necessity does not exist for your having board and lodging at the public expense, while confined on the jury." Yet the authority of modern times has departed from the ancient practice of requiring a jury to be confined without meat or drink until a verdict is reached, and has adopted the humanitarian principle of properly caring and providing for the jury, while considering a case; and if the inherent power of the court, which now seems to be recognized generally by the authorities, exists, the fact that the statute also confers the authority does not add to the power of the court the right to incur such expense. I know of no rule under which the trial judge could compel a juror, when confined, to send out and bring in a barber to shave him or cut his hair. I know of no rule by which a trial judge could require a juror to call a physcian to attend him in case of illness. I know of no rule by which the trial judge could compel a juror to furnish himself with board and lodging when in the custody of the law and confined under the provisions of the law in the trial of cases.

If the court has the inherent power in one instance, it has it in the other; and the mere failure to vest such power by statute is of no consequence and cannot take away from the trial court such power. These things, in my judgment, are necessary incidents in the administration of the law, and when the trial judge determines that such matters are necessary, they become county charges in the absence of a showing that the expense was not necessary or the services not rendered. For these reasons I dissent from the majority opinion.